UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOHN MICHAEL CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-1190 (IDD) |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the parties' cross-motions for summary judgment.[1] [Dkt. Nos. 7, 8]. Pursuant to 42 U.S.C. § 405(g), John Michael Crawford ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–34, 1381-83. For the reasons stated below, Plaintiff's Motion for Summary Judgment [Dkt. No. 7] is **GRANTED**, and Defendant's Motion for Summary Judgment [Dkt. No. 8] is **DENIED**.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on April 30, 2021, alleging disability since May 28, 2011, due to multiple sclerosis as well as cognitive impairment and extreme fatigue resulting from

---

[1] On January 5, 2024, Plaintiff filed his Brief in Support of a Social Security Appeal [Dkt. No. 7], and Defendant filed its Memorandum of Law in Support of Commissioner's Decision [Dkt. No. 8] on February 5, 2024. The parties did not file motions with these briefs. In light of that, the Court ordered the parties to file a notice clarifying whether the Court should interpret the parties' briefs as cross-motions for summary judgment. *See* Dkt. No. 9. The parties filed their Joint Notice in Response to the Court's February 9, 2024 Order [Dkt. No. 10], which requested that this Court interpret the parties' briefs as cross-motions for summary judgment. Therefore, the Court interprets Plaintiff's Brief in Support of a Security Appeal [Dkt. No. 7] ("Plaintiff's Motion for Summary Judgment") and Defendant's Memorandum of Law in Support of Commissioner's Decision [Dkt. No. 8] ("Defendant's Motion for Summary Judgment") as the parties' cross-motions for summary judgment.

of multiple sclerosis ("MS"). Administrative Record ("R.") at 21, 82. Plaintiff's claims for DIB were denied on August 19, 2021, and again upon reconsideration on January 28, 2022. R. at 94, 100. Administrate Law Judge ("ALJ") Andrew Emerson conducted a hearing on January 25, 2023. R. at 42–80.

On February 16, 2023, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. R. at 18–37. On July 11, 2023, the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). R. at 3–5. Having exhausted his administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision, on September 6, 2023. Dkt. No. 1. The parties filed cross-motions for summary judgment, and this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a district court must uphold the Commissioner's final decision "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Easterbrook v. Kijakazi*, 88 F.4th 502, 511 (4th Cir. 2023) (citing *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) and quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence" but less than a preponderance of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotations and citations omitted).

When determining whether an ALJ's decision is supported by substantial evidence, the

2

court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro*, 270 F.3d at 176. (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). It is the ALJ's duty—and not the reviewing court's—to resolve evidentiary conflicts, and the ALJ's decision must be affirmed if it is supported by substantial evidence. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). In fulfilling this duty, the ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted). If the Commissioner fails to apply the correct law or does not provide the reviewing court sufficient reasoning indicating that he or she has conducted the proper legal analysis, then reversal of the Commissioner's decision is required. *Ingram*, 496 F.3d at 1260 (citation omitted). The court's scope of review is therefore limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Brown v. Comm'r of Soc. Sec.*, 873 F.3d 251, 267 (4th Cir. 2017) (citations omitted).

The Fourth Circuit applies a harmless error analysis to social security DIB determinations. *See Mascio*, 780 F.3d at 639. The harmless error doctrine applies when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, No. 1:17-cv-167, 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed. Appx. 65, 67 (4th Cir. 2014) (per curiam)). A harmless error occurs when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant.

3

*See Lee v. Colvin*, No. 2:16-cv-61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When conducting a harmless error analysis, a court must estimate "the likelihood that the result would have been different." *See Morton-Thompson v. Colvin*, No. 3:14-cv-179, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)).

### III.   DETERMINING DISABILITY AND THE ALJ'S DECISION

#### A.   Determining Disability and the Sequential Analysis

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that make it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. *Id.*; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. Specifically, the ALJ must consider whether the claimant: (1) is engaged in substantial gainful activity;[2] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official Listing of Impairments; (4) has an impairment that prevents past relevant work;[3] and (5) has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

---

[2] Substantial gainful activity ("SGA") is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks, hobbies, therapy, school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[3] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b), 404.1565(a).

When evaluating a claimant's asserted mental impairments, the ALJ is required to apply the "special technique" in 20 C.F.R. § 404.1520a. This technique requires the ALJ to "rate the degree of functional limitation resulting from [any medically determinable mental] impairment(s)" in "four broad functional areas…: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself" ("B criteria"). 20 C.F.R. § 404.1520a(b)(2), (c)(3). Limitations in these areas are rated on a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). The ALJ then "determine[s] the severity of [the claimant's] mental impairments(s)." 20 C.F.R. § 404.1520a(d). Typically, impairments are found to be non-severe where limitations are rated "none" or "mild." *Id.*

### B.  The ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 28, 2011. R. at 24.

At step two of the sequential evaluation, the ALJ found that Plaintiff had two severe medically determinable impairments: degenerative disc disease and multiple sclerosis. *Id.* The ALJ considered Plaintiff's optic neuritis, strabismus, hypertension, and hypercholesterolemia, but found that these impairments could not reasonably be expected to have more than a minimal effect on Plaintiff's ability to perform basic work. R. at 24–25.

At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 25.

In between steps three and four of the sequential evaluation, the ALJ determined Plaintiff's residual functional capacity ("RFC"). R. at 28. The ALJ concluded:

> The [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the [Plaintiff] could only stand and/ or walk for 4

> hours in an 8 - hour workday; could frequently push and or pull with both of his upper extremities; could frequently operate foot controls with both of his feet; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could never climb ropes, ladders, or scaffolds; could frequently rotate, flex, and extend his neck; could frequently reach overhead, reach, handle, finger, and feel bilaterally; and must avoid concentrated exposure to extreme cold, extreme heat, wetness, excessive vibration, hazardous moving machinery, and unprotected heights. The [Plaintiff] would also be limited to occupations requiring only frequent near acuity, far acuity, and peripheral acuity. Additionally, the [Plaintiff] could only perform simple, routine, repetitive, low - stress (i.e., no strict production quotas or assembly line pace work) work involving occasional interaction with supervisors, co - workers and the general public and could tolerate occasional changes in a routine work setting.

*Id.*

At step four of the sequential evaluation, the ALJ found that Plaintiff could not perform any past relevant work as a chief computer programmer or a computer systems hardware analyst. R. at 35.

At step five of the sequential evaluation, the ALJ found that, considering the Plaintiff's age, education, work experience, and RFC, Plaintiff could perform the requirements of representative, light exertion, and unskilled occupations such as the following: routing clerk, an office helper, and photocopy machine operator. R. at 36. Based on the above, the ALJ concluded that Plaintiff did not suffer from a disability, as defined by the Social Security Act, from May 28, 2011, Plaintiff's alleged onset date, through December 31, 2016, the date last insured. *Id.*

## IV.   ANALYSIS

### A.   Cross-Motions for Summary Judgment

Plaintiff moves for summary judgment based on one alleged error in the ALJ's decision: that the ALJ failed to properly evaluate and adequately explain his conclusions regarding the consistency of Plaintiff's subjective allegations as required by SSR 16-3p.  Pl.'s Mot. for Summ. J. at 1, 8. Defendant seeks summary judgment on the grounds that substantial evidence supports the ALJ's decision, including the resultant RFC, and that the ALJ fully considered the record

evidence, including Plaintiff's subjective complaints, to find that the Plaintiff was not disabled. Def.'s Mot. for Summ. J. at 1–2. For the reasons set forth below, the undersigned finds that the ALJ did not adequately follow the proper legal standard required under SSR 16-3p.

**1.    The ALJ's Evaluation of Plaintiff's Subjective Allegations Was Insufficient**

Plaintiff argues that the ALJ failed to provide his reasoning for finding that the Plaintiff's subjective allegations were inconsistent with other evidence in the record. Pl.'s Mot. for Summ. J. at 1. Plaintiff specifically asserts that the ALJ's decision was an error of law because he failed to "explain *how* specific evidence was purportedly inconsistent with Plaintiff's allegations about the functional impact of his symptoms" of significant physical and cognitive fatigue and his inability to walk for longer than a few minutes at a time. Plaintiff's Reply Brief to Defendant's Mot. for Summ. J. (hereinafter "Pl.'s Reply Brief") at 1; Pl.'s Mot. for Summ. J. at 9–10.

When evaluating a claimant's symptoms, the ALJ must apply the two-step evaluation process set forth in SSR 16-3p. 2016 WL 1119029 (Mar. 16, 2016) and 20 C.F.R. §§ 404.1529, 416.929. *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 359–60 (4th Cir. 2023); *Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83, 95 (4th Cir. 2020). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2016 WL 1119029 at *2. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine their effect on claimant's ability to work and whether the claimant is disabled. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016 WL 1119029 at *4. During this second step, the ALJ "considers the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other

information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Shelley C.*, 61 F.4th at 360 (quoting *Arakas*, 983 F.3d at 95) (citing SSR 16-3p, 2016 WL 1119029, at *4–5).

A person's statements about the intensity, persistence, and limiting effects of symptoms cannot be discounted "solely because [] objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Shelley C.*, 61 F.4th at 360 (quoting SSR 16-3p, 2016 WL 1119029, at *5). However, the ALJ should consider inconsistencies in the record to determine whether Plaintiff's subjective allegations can be reasonably accepted. *Shawntelle E. v. Kijakazi*, No. 3:22-CV-00365 (DJN), 2023 WL 3485982, *7 (E.D. Va. Apr. 28, 2023), *report and recommendation adopted*, No. 3:22CV365 (DJN), 2023 WL 3483895 (E.D. Va. May 16, 2023). Inconsistencies in objective medical evidence is one of many factors that the ALJ must consider in evaluating the intensity, persistence, and limiting effects of someone's symptoms. SSR 16-3p, 2016 WL 1119029, at *5. An ALJ's evaluation of a claimant's subjective complaint will stand only if the ALJ "build[s] an accurate and logical bridge from the evidence to his conclusion." *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ must provide specific evidence-based reasons for evaluating a claimant's subjective symptom allegations and must explain the basis for finding the claimant's statements consistent or not with the record, such that the Court can conduct meaningful judicial review. *See* SSR 16-3p, 2016 WL 1119029, at *7–9; *Monroe*, 826 F.3d at 189–91.

Although the ALJ did consider and extensively cite to numerous pieces of evidence in the record, such as medical examination reports and findings and Plaintiff's statements regarding his symptoms and activities of daily living, the decision largely recited the objective medical evidence without adequately explaining how it undermined Plaintiff's specific allegations of fatigue,

inability to walk for long distances, and functional limitations. R. at 29–33. The ALJ repeatedly concluded that the Plaintiff's symptoms were inconsistent with the record and that Plaintiff could perform light work, but the decision does not create a logical bridge in which the Court can follow and understand how and why the ALJ came to his ultimate decision. R. at 29, 32. The decision does not sufficiently provide an analytical connection between the evidence that the ALJ cites to and his conclusion that the evidence does not support that Plaintiff's symptoms are as severe as the Plaintiff alleges. R. at 34. As a result, the Court is "left to guess" how the ALJ determined that the objective medical evidence, such as stable MRI imaging and intermittent daily activities, translated into Plaintiff's RFC despite Plaintiff's allegations of disabling fatigue. *See Mascio*, 780 F.3d at 637 (holding that an ALJ's decision must be remanded when the ALJ's analysis of the record is not adequately explained and the court is therefore "left to guess" how the ALJ reached its conclusions).

Plaintiff asserts that the holding in *Shawntelle E.* should be applied in this case. Pl.'s Mot. for Summ. J. at 9–13. In *Shawntelle E.*, the plaintiff filed an application for disability benefits, alleging that he was unable to work due to lumbar spine pain, panic attacks, and degenerative spine disease. *Shawntelle E.*, at *1. The ALJ found that the claimant's impairments could reasonably cause plaintiff's alleged symptoms, but his "statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record." *Id.* at *9. The plaintiff argued that the ALJ's decision was legally flawed because the ALJ did not properly assess plaintiff's subjective complaints alongside the medical evidence in the record, that the ALJ "improperly favored normal objective evidence over abnormal objective medical evidence," and applied the incorrect standard of law when assessing activities of daily living. *Shawntelle E.*, at *4.

9

The court explained that, while the ALJ acknowledged and listed plaintiff's subjective allegations regarding their symptoms and summarized the medical evidence in the record, the ALJ's determination was insufficient because the ALJ did not "explain how [the ALJ] discredited [p]laintiff's subjective allegations" or explain which evidence supported the ALJ's conclusion that the subjective allegations were inconsistent with the rest of the record. *Id.* at *10–12. In the court's review of the record, plaintiff's subjective allegations were consistent with her reports to her medical providers. *Id.* at *10. The plaintiff repeatedly reported symptoms of severe pain, worsening symptoms with ability to stand and walk, and ineffectiveness of treatment and medication to remedying pain. *Id.* Additionally, the court found that the ALJ over relied on the plaintiff's activities of daily living to discredit plaintiff's symptoms without considering plaintiff's limitations in completing those daily activities or explaining how those activities demonstrated an ability to sustain full-time work. *Id.* at *11. Ultimately, the court remanded the case because the ALJ did not provide a sufficient explanation of how the evidence supported his determination as required under SSR 16-3p, and the ALJ failed to properly consider the consistency between the plaintiff's complaints about their symptoms and the other evidence in the record. *Id.* at *10, 12.

This case is similar to *Shawntelle E.* because the ALJ did summarize significant portions of the medical record but failed to adequately explain how the cited evidence undermined Plaintiff's subjective allegations of disabling fatigue and his limited ability to walk more than short distances. The ALJ first found that the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. R. at 29. Like in *Shawntelle E.*, the ALJ acknowledged Plaintiff's allegations, as seen by the ALJ recounting Plaintiff's statements made during the administrative hearing and statements included in the Representative Brief [Ex. 11E] about the limiting effects of his MS, headaches, degenerative disc disease, and somatic depression

10

on his ability to perform basic work activities. R. at 29. The ALJ referenced the following

allegations made by the Plaintiff regarding his symptoms:

> [Plaintiff] would be too fatigued to work . . . requires assistance of tools to carry groceries . . .that he could not walk much more than the length of a block before he would have to stop and rest . . . [and] that he becomes fatigued after carrying out his regular activities in about four hours."

*Id.* However, right after listing some of the Plaintiff's subjective allegations, the ALJ came to the

same conclusion as the ALJ in *Shawntelle E.* that "the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record." R. at 29.

The ALJ opined that the Plaintiff's statements were inconsistent "because the evidence in

the record shows that the impairments were not as severe as his allegations would suggest." *Id.*

The ALJ concluded that the objective medical evidence, such as MRI results from June 2011 and

March 2014, supported the RFC. The ALJ extensively recited the findings of these two MRIs,

including statements such as the March 2014 MRI "showed that he only had 'minimal' disc

desiccation and 'minimal' degeneration in his cervical spine," and "that there was 'no significant

change' in his MS since the prior imaging in June 2011."  R. at 29, 30 (citing Exs. 3F, 2F). In

reliance on these findings and other results in these MRIs, the ALJ concluded that Plaintiff's MS

appeared to be relatively stable, which supported "finding that the fatigue and weaknesses that the

claimant could reasonably be expected to experience would not be severe enough to preclude a

reduced range of work." R. at 30. The issue with the ALJ's conclusion here is that he did not

explain how stable MRIs or largely unchanged examination findings necessarily contradicted

Plaintiff's allegations of fatigue or reduced walking ability. Instead, it appears to the Court that the

ALJ reaches its decision primarily by reciting the medical evidence and restating the RFC without

11

meaningfully discussing how this evidence is or is not consistent with each of the Plaintiff's subjective allegations.

Like the court in *Shawntelle E.*, this Court is "left to guess" how and why the ALJ determined that the objective medical evidence in the report discredited Plaintiff's subjective allegations because the ALJ's decision does not adequately explain why the ALJ came to this conclusion. For example, the ALJ repeatedly stated that imaging showed "mild degenerative changes" and "no active demyelination," the decision does not explain why "mild degenerative changes" and "no active demyelination" could or could not result in the extent of Plaintiff's fatigue and physical movement limitations as alleged. R. at 30. The ALJ evaluated the reports from Plaintiff's physical examinations, visual examinations, mental status examinations, and neuropsychological assessments in the same fashion – by restating the details of each of those examinations and simply concluding that such objective evidence does not support Plaintiff's subjective allegations. R. at 29–33. SSR 16-3p requires more than a conclusory statement that the symptoms are inconsistent with objective evidence. The ALJ must explain how the evidence actually conflicts with the claimant's reported limitations. SSR 16-3p, 2017 WL 5180304, at *8. Simply restating, even in as much detail as the ALJ did in this case, is insufficient to meet the legal standard under SSR 16-3p because there is no logical bridge showing the evaluation of all evidence when considering the record as a whole.

Regarding Plaintiff's allegations about his walking limitations, the ALJ's decision does not explain how the Plaintiff could still perform a reduced range of light work despite his allegations of limited mobility. The decision does not state how the ALJ considered this particular subjective allegation when determining Plaintiff's RFC and deciding that the Plaintiff could still "stand and/ or walk for 4 hours in an 8 - hour workday." R. at 28. The ALJ cited to Dr. Berkovich's third

medical opinion from December 2022, which states that the Plaintiff could sit, stand, and walk for less than two hours in an eight-hour workday and would require an assistive device for ambulation. R. at 33–34. The ALJ did not find Dr. Berkovich's third medical opinion persuasive because it was not consistent with the rest of the evidence, even though the ALJ does not discuss the consistency between Dr. Berkovich's third medical opinion and Plaintiff's subjective allegations. *Id.*

Due to the lack of an adequate analysis of Plaintiff's subjective allegations and the consistency of those statements throughout the record as required by SSR 16-3p, the Court is left to conclude that the ALJ's determination relied too heavily on the objective medical evidence. The ALJ effectively committed a similar error that the Fourth Circuit addressed in *Arakas* by discounting Plaintiff's subjective symptoms because objective findings do not fully corroborate them. *Arakas*, 983 F.3d at 95–97. The ALJ often noted that the objective medical evidence did not reflect results that supported Plaintiff's symptoms. For example, the ALJ stated "there also does not appear to be any objective mental status examination findings . . . [indicating that] the claimant had impaired memory skills, decreased concentration or attention . . ." R. at 32. Such statements indicate that the ALJ improperly relied on what the medical reports did not say to support its conclusion that Plaintiff's symptoms were not as intense or persistent as Plaintiff alleged.

The ALJ's reliance, almost entirely, on the objective medical evidence is also inconsistent with the Fourth Circuit's position that a claimant can exclusively rely on subjective evidence to prove the intensity, persistence, and limiting effects of their symptoms. *See Arakas*, 983 F.3d at 95–86 (discussing how some subjective symptoms, such as pain, are often not able to be shown through objective medical evidence, and therefore, the lack thereof cannot be used to solely discredit those subjective symptoms). The ALJ concluded that the objective medical evidence

13

indicated that Plaintiff's MS and related conditions were stable across time, and that the reports did not demonstrate "active demyelination." R. at 30. The ALJ did not consider how Plaintiff's fatigue could have worsened over time and that the impact might not be reflected in the objective medical evidence. There was no reasoning provided that supports the notion that Plaintiff could not be experiencing disabling fatigue unless objective medical evidence reports it. Instead, the ALJ appeared to independently infer that stable imaging equated to non-disabling fatigue, which can be interpreted as the ALJ improperly using his own lay interpretation of the medical evidence. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (explaining that the ALJ may not "play doctor" by drawing unsupported medical conclusions from the record).

Lastly, the ALJ's conclusions on Plaintiff's activities of daily living are not supported by an adequate evaluation. The ALJ cited several statements made by the Plaintiff regarding his activities of daily living, including that he could do his own laundry, take out the trash, drive, walk for exercise, and run errands and attend doctor's appointments by himself. R. at 32. The ALJ ultimately concluded that Plaintiff's subjective allegations were not entirely consistent with his statements about activities of daily living. R. at 32. However, the Fourth Circuit has previously held that limited daily activities do not automatically demonstrate an ability to sustain full-time competitive employment. *See Arakas*, 983 F.3d at 101. ("An ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can do them."). The ALJ in this case did not meaningfully consider the manner in which Plaintiff performed these daily activities or how Plaintiff's allegations of severe cognitive and physical fatigue and limited walking ability impact these daily activities. Additionally, as similarly done in *Shawntelle E*, the ALJ appears to rely on these activities and did not explain how these activities logically support the RFC findings. *See Shawntelle E.*, at *11. That conclusion is particularly problematic since

14

taking care of oneself, performing household tasks, and the like generally are not considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

In sum, the undersigned finds that the ALJ did not sufficiently apply SSR 16-3p in evaluating Plaintiff's subjective symptom allegations because the decision lacks a sufficiently reasoned explanation connecting the evidence to the rejection of Plaintiff's subjective allegations, thus preventing this Court from completing a meaningful judicial review. Therefore, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Dkt. No. 7] is **GRANTED**, and Defendant's Motion for Summary Judgment [Dkt. No. 8] is **DENIED**. It is further

**ORDERED** that the decision of the Commissioner is hereby **VACATED**, and this matter is **REMANDED** for further consideration consistent with this Order.


_____/s/_____

July 31, 2026                                          Ivan D. Davis
Alexandria, Virginia                          United States Magistrate Judge

15